All right, our first case this morning is GEO M Martin v. Alliance Machine. Mr. Keller? Good morning. May it please the court, I'm here with my partner, Michael Lisi, representing the GEO M Martin Company and the Martin Family Trust. Let me start first with the issue of when we look at what the court did, we believe that rather than follow precedent of this court and the standards applicable on Rule 50, what Judge Alsop in essence created was an essence test. When you read his order, he compares the essence of the prior art to the essence of the invention. And frankly, we believe that that's not the appropriate test under any of the law that's been decided in this circuit. And what he did even in that invention, he oversimplifies it. He talks about it being a mere hydraulic system attached to the upper clamps. And then when he talks about the prior art, both the VISI machine and PALMAC, he goes to that same simplified approach of a hydraulic system. But doesn't the PALMAC bundle breaker have a compliant structure? It has a lifting mechanism. And the only difference is that its compliant structure comes up rather than goes down? No, that's not correct, Your Honor. Okay, what's the difference? When you look at PALMAC, and PALMAC was disclosed to the Patent Office, obviously, and is described in detail. And it has the compliance structure, the hydraulics that go back and forth? It has an airbag below which lifts these lifting members. And the design of that piece of equipment is somewhat unique and I think important here. It has the rope conveyors and then it has the lifting bars that come up between the rope conveyors. It has the airbag that lifts up against a steel member and then lifts up against the lifting members. Yes. And so you have the situation where the airbag there, albeit below, is not lifting directly into what are the rigid members. There is the steel interface between them. But that's not going to make any difference for the compliance structure at all, is it? It's going to have the same, the fact that there's a steel inter... It actually will. Okay, tell me what it is. It actually will have a difference because, obviously, the problem to be addressed in this patent was the lack of compliance. And the patent talks about the difficulty in the prior art in terms of having this compliance structure. And it talks about springs, which if we get to VIZI, I will talk about. And then it talks about the problems in PALMAC. But VIZI, we have to read at the same time because it's a compliance structure. It's coming down from the top. Well, that's where, Your Honor, we'll have a debate as to whether that is a compliance structure or not. Because, frankly, one of the things that we think happened in this case is, and if you look at Judge Alsop's order, he says the scope and content of the prior art was undisputed. Nothing could have been further from the truth in this case. It was hotly disputed as to what the scope and content of VIZI was. And in terms of VIZI, when you look at it, we don't think it is a compliance structure. There was flexible tubing that linked the, that allowed the air to flow freely between the compliance structures, right? Again, that was disputed. And there was testimony from the people down in Australia that while that was attempted to tube them together, that tubing was disconnected. I read, read Judge Alsop to make a finding that they were together. I appreciate that. And that's part of the... Is there a clear error in that? Well, I think there's an error in the fact that he's supposed to be giving the inferences to the George Martin Company and the Martin Family Trust as the non-moving party. And as you go along through his analysis of the questions of fact, what you find is that he is indeed weighing the evidence. He's weighing the credibility of the witnesses. For example, on the issue of the compliance structure, our expert, Mr. Carvalho... This is a little unique, though. He's had a trial. There is a trial. Granted, the jury couldn't reach a verdict, and so he moves on Jamal, but he's had an adequate look at the record here. This isn't... It's not a complete summary judgment on the written record sort of a situation, is it? No, I agree with that, that we have a record. But when we look at the scope and content of the prior article, for the judge in his Rule 50 order to say it was undisputed that that's where I come to this issue of the dispute in the record where we have testimony from Mark Fankhauser, who's the person on site most responsible for this machine, saying the machine was allergic to breaking, saying the machine created chaos within the plant, saying that it could not reliably break. And you look at it and come back to the point on the essence of this invention. If you look at the summary of the invention, it actually talks about the essence being reliable breaking, utilizing a compliance structure. Well, but the claim features are what we have to worry about for obviousness, and there's nothing in the claims about working at a certain rate or having a certain capability to handle a reliable throughput at a market rate. We can talk about the market rate, and I agree with Your Honor, there's nothing in the claims that talks about commercial production speeds. But when you look at the essence of the invention, and I'm coming back to his test that he's applying, the essence of the invention, if you look at the summary, actually does define it to be in terms of reliable breaking. And the issue of reliable breaking is one that goes to this part of whether VISI is a compliant structure or not, because a compliant structure will break logs, multiple logs of uneven heights, reliably. Springs, foam, flat platens, flat platens will break them but will damage the log. The problem with springs as described actually in the patent is that they won't do it reliably because they have this uneven distribution of force. They increase force with displacement. But I do want to come back to Paul Mack for one second, Your Honor. I apologize, I got off track. Excuse me. Because there is something really key to Paul Mack, because what Judge Alsop decided there was, and it was inherent in the question perhaps as well, Your Honor, isn't this simply Paul Mack turned upside down? And it is not that. And it is not, as he says, isn't it the simple decision of where to put the compliance structure? That is only one of the factors. As Dan Talkin, who is here today actually, was designing this, he has a myriad of design problems he has to look at. He has then a myriad of design considerations. And when you look at what he has to do, location of the compliance structure is one. But then it is orientation of the compliance structure which is significant, whether it is perpendicular or parallel. There are other factors that he looks at. He has to look at the contact area. He has to look at the clamp movement. He has to look at how he is going to exert the force on the logs. He has to look at the force behavior, which is springs versus a compliance structure. He has to consider whether or not to use rigid members. I talked about the force orientation, parallel versus perpendicular. He has to think about how do I do the operative engagement. And if you do the simple math and you multiply out those permutations, we actually have more than a thousand permutations, how we can orient these various elements. So it is not simply a situation where I have a compliance structure. I am flipping it upside down. And that is the difference with the Palmac machine. It is not a compliance structure that is similar in design to the one which is ultimately... But you are still left with Visi. And it seems to me, as Judge Rader pointed out, I mean the district court did in certain respects credit your evidence. I mean it was quite clear. He said certain things are disputed and certain things are not. And he says whether or not the Visi machine was capable of regularly breaking logs of varying height, it is undisputed. Your deal, it seems, from the way the district court describes it at trial, was that this wasn't commercially viable. No, and I know we didn't qualify as prior art. We talked about commercial production at trial more in the context of anticipation and ready for patenting. I agree with that. But also with respect to obviousness, we talk about whether it works. Because under the test, it is what does that teach to a person of ordinary skill in the art. So reliable... It did work, right? I disagree with that. It might not have worked as well. It might not have been commercially viable. But the undisputed evidence was that it did work. It was capable of doing a certain function. I think we have a disagreement on that, Your Honor. I think the evidence was not that it worked for a certain function. And I think that was the problem with it. Well, didn't even Mr. Fankhauser say, yes, it'll break a law? No, what Mr. Fankhauser said was, if I move it into the machine, out of the machine, into the machine, out of the machine, and I back it forth, back and forth, I can perhaps get it to break in that situation. That's not acting as a compliant structure. That's the difficulty with this. Because what we have to decide, this patent was an improvement. That's what it's defined to be. It's an improvement over the prior art. The prior art that is described in the patent are springs. So the question is, is it truly a compliant structure, or is it merely acting as springs? Maybe this is the right question. We can use this as prior art, even if it doesn't work, right? You can use it as prior art under 103 for what it teaches. For what it'll teach one of skill in the art. Correct. And so the question that I think the Court is posing to you still lies, is that if you look at PALMAC, which has a compliant structure coming up from the bottom, with the intervening steel problem that you mentioned, and then you look at VIZI, which is now, we're agreeing, prior art, why doesn't VIZI provide whatever PALMAC did not to say, come from the top, be a little more cushiony, and it'll work, right? And why wouldn't one of skill in the art see that? Because when you look at the file history, what was before the Patent Office there was springs, which are disclosed both in the Fernandez patent and in description, and PALMAC. And the Patent Office decided that that combination of springs and PALMAC did not invalidate this patent under obviousness. And if, and I think it is what was shown, if VIZI is nothing more than springs, and the key to VIZI is it's the orientation of these inflatable seals contained within these metal grippers running parallel to the direction of travel of the boards. But the district court found that VIZI had a compliant structure. It was not just springs. It had the tubing that linked hydraulically the various structures. Well, and that's where the court makes this determination of undisputed fact that it had a compliant structure. And that, frankly, is what we take exception to, in part, with the court's order. Because where you have testimony from a variety of on-site individuals, you have cross-examination from TEI's employees. You have their own trip reports going to this issue of what is it acting like. You have Mr. Talkins testing himself, both of the inflatable seal within the gripper. And that's key to go look at, because when you look at that testing, that testing is what is, it shows how it is acting and what it would teach. And I think at the end of the day, you get to the point where you have a spring structure to a person of ordinary skill in the art, and you have PALMAC. And that combination is not teaching what is the invention. Your Honor, I was going to save a few minutes. You may. Thank you. I just want to raise, well, I want to raise one question on the willfulness issue. I think the question we have there is one for the court to decide, when are we going to make this determination of that first prong? And we've raised that in our briefs. Judge Alsop said that any evidence could be considered, regardless of when it was developed. We think that's incorrect. We think the 4I limited case out of the Western District of Texas is the correct application, saying that you have to make the determination of the objective standard evidence that existed at the time. Why did you think the judge felt compelled to reach the issue of willfulness, given the findings with regard to obviousness on the motion? Well, he ruled on willfulness on a Rule 50 motion at the conclusion of evidence. He made that decision then. He let the case go to the jury on obviousness. The jury hung 6 to 1 in George Martin's favor. He actually then ordered more discovery on this whole question of Vizzie, and then granted the Rule 50. So I guess he made the determination before he made up his mind on obviousness. Thank you, Mr. Keller. Mr. Vitt? Good morning, Your Honors. Tom Vitt. May it Your Honor, it's not correct to say that Judge Alsop didn't focus on the claims. Judge Alsop did exactly what KSR asked him to do, which is to focus on the claims. KSR's got a quote here that really cuts across all the issues in this case, and that is, what matters for obviousness is the objective reach of the claims. If the claim extends to what is obvious, it's invalid under 103. Now, everything we just heard, we never heard what the claims actually are for compliance structure. A compliance structure is simply a structure that deforms to allow a more uniform distribution of force. It has to be fluid pressurized. It has to have an airbag. That's a fancy name for an airbag. And it has to deform to allow more uniform distribution of force. That's what a compliance structure is. It's nothing about acts like a spring. It's nothing about reliable braking. That's it. That's what Claim 1 covers. That's what Judge Alsop focused on. Now, Judge Alsop... In the summary of the invention, column 2, it says, the essence of the invention is the provision of fluid pressure compliance structure to provide a reliable braking. So at least there's some need for requirement of reliability, right? Not in the claims, Your Honor. It would have been easy to write a claim that said, you must have reliable braking or consistent braking. And of course, what does that mean, reliable? Vizzey, and I'll get to that in a minute, Vizzey did brake multiple logs of uneven heights in some circumstances. That's an uncontested fact. But the claims don't require reliable braking. That would have been easy to write that into the claims. They didn't. They chose not to. How do you deal with the secondary consideration, and particularly the one of long-felt need? Okay, Your Honor, that was... If Vizzey and Palmec had solved the problem, we wouldn't have a continued effort to solve the problem, which is evident with even the one, the CASA, is that how you say it? CASA reference? Which shows that the market's still trying to find a solution. You've got a long-felt need here, right? I don't think it does show that, Your Honor. Again, as KSR teaches, we have to focus on the claims, and they have to show for secondary consideration a nexus between the claims and what the secondary consideration is. And the long-felt need that might have been out there was to brake three or more logs of multiple heights. Three or more, sort of unlimited, infinite compliance ability. There was no... The claims don't cover that. That's not... Or they do cover it. That's not the patented feature. The claims include and encompass plurality. They only talk about two or more. The patented feature is two or more, not three or more. Judge Alsop made that clear at trial. And there was no long-felt need to be able to break two or more logs of uneven height. Our company, Alliance, sold the machine, the logs of uneven height. That's undisputed. The fact that George Martin comes into the market, and Tecasa comes into the market to compete with us, we had the market. There wasn't a big demand for this. There's thousands of converting lines, and we're selling 10 or 15 bundle breakers a year. So there wasn't really a long-felt need at all, because nobody's buying these things to speak of. The fact that Martin comes into the market, competes with us, Tecasa comes into the market to compete with us, that doesn't show a long-felt need for the claims, for what's at issue in the claims. And that cuts across all of their secondary considerations evidence, Your Honor. Well, we always have this problem with secondary considerations, is that they always occur in the context of a larger invention. And a portion of the need, a portion of the success, a portion of everything can be attributed to something beyond the invention. But the invention is also part of it. And there's also a... Respectfully, Your Honor, there's not evidence of that. There's no evidence of commercial success linked to what the claims cover, which is breaking multiple logs two or more, just two. The machine's working better, and people are buying it because it works better and faster and more reliable, and that has something to do with the compliance structure. Your Honor, the evidence doesn't link that up to the claims. It just doesn't, and it provides ample evidence for why people buy... It links it up to compliance structure. It links it up to the claims. It links it up to a full floating platens feature, which is three or more. They could have written a claim to three or more. Instead, they wrote a claim that was broader than that, to two or more. We had a machine that broke two logs, two logs of uneven height. We kept selling it. They sold theirs because they had a strong monopoly in the stacker market, and that was a huge advantage to them, and because they were a new competitor. They're going to sell some machines, but we kept selling ours right along. I guess the fundamental point is, secondary considerations can't overcome such a strong selling on the primary factors. Let me get back to that, if I could. The key on the Vizzy machine is the evidence was uncontested, uncontested, that it had a compliance structure. In other words, the physical structure of that machine was uncontested. It is not right to say those airbags were not plumbed together. They were plumbed together when they left the factory. They were plumbed together on the line in Vizzy, in Australia. There was an experiment by Vizzy to take some of them, to disconnect some of them, but it's just not right. We had a structure that deforms to allow a more uniform distribution of force. That was uncontested. Their own witness, Mr. Tolkien, proved that, proved that through testing that's discussed in the briefing, that describes how when you lower the Vizzy grippers, transfers the force over to the shorter log, and you have a more uniform distribution of force. That's it, full stop. What do you make of the district court's seeming reliance on this essence of the invention notion? Is that really consistent with the way we treat and our notion of obviousness? Your Honor, he was using the hydraulic system as a shorthand for compliance structure. Remember that we stipulated, the party stipulated that all the elements were met of Claim 1 except compliance structure. He hasn't done anything wrong. He's applying the claims. Judge Alsop is the one who made us fill out these color-coded claim charts to stipulate as to what's in and what's out. All they contested at trial was compliance structure for Vizzy, and the undisputed fact showed that that compliance structure element was met. It was met. Now let me address some of the ground... One of skill and the art to combine Vizzy and Palmac. Well, they're both addressed to the exact same problem. You've got Palmac, which has an airbag running across the flow of material and clamps from below, and you've got Vizzy clamping from above with airbags running parallel to the flow of material. Each causes some design issues. Now, Palmac is a success. Clamps and the grippers of Vizzy and Palmac are still not quite the compliance structure of the claimed invention. What would lead one of skill and the art, give them any common sense reason to traverse that difference? I disagree that there is a difference. Palmac is the compliance structure of Claim 1. It's just on the bottom. It's a fluid pressure... Well, except that they've separated the cushiony structure, as I call it, with a metal interface that probably takes a little bit of the uniform distribution out of it. That difference isn't in the claims, Your Honor. It's just an L-shaped rod that rides on that airbag instead of having the rod itself ride on the airbag. That difference is not in the claims. Well, but the claims are talking about that uniform distribution principle. Well, it allows... To the extent that you've got a solid piece of steel in between, you've got a little less uniform distribution, don't you? I don't think so, Your Honor. As a matter of physics, I don't think so. It allows... And it's uncontested. The real point is it's uncontested. Palmac has a compliance structure that allows for more uniform distribution of force. That was uncontested. Well, it's not a very flexible member, for instance. It is. It's got the rubber bag, the rubber hose running, the fire hose running across. That's a flexible member. And that's uncontested. It's not contested. Well, let's put it this way. There is a difference in some respect. What would motivate one of Skill and the Art to traverse whatever gap there is between the prior art and the claimed invention? Okay. If you're looking at Palmac as the primary reference, there's some advantage to, obvious the conveyors coming up from below. You've got that space that you can arrange your platens however you want them, whereas Palmac, you're constrained by coming up from below. That would motivate a person of ordinary skill. If you're looking at Vizzy and what would motivate you to use Palmac's longitudinal airbag that goes all the way across... Now, I want to be clear. The Vizzy machine airbags were all plumbed together. They acted as a unit at sonic velocity. It still meets that claim four requirement of width across. You could look at Vizzy and be motivated to use Palmac's airbags because you got one airbag. It's fewer parts. These are just common design choices. How you orient the airbag, that's not what this turns on. Whether you come from the top or the bottom, that's not what this turns on. This is all ordinary skill. You can search the record all day. You will not find an explanation from anybody that a ramp from the top would be beyond a person of ordinary skill. It's not in there. It's just absolutely not in there. That's a simple application of ordinary skill, whether it's Vizzy or Palmac, whichever direction you come from. We need to look at standing here before we address obviousness? You do not because you have two parties in the case, one of which concededly has standing. You only reach standing if you reverse on obviousness. You only need to reach standing if you reverse on obviousness. I did bring up standing in the briefing as an excess of caution to make sure that my client's rights were protected if we happened to lose. All we're really saying on standing, Your Honor, if you read everything we said, is that this court really hasn't directly addressed the statute and really does need to address the statute. Even if we were to agree with you on obviousness, we vacate the willfulness, right? There's no reason whatsoever to reach willfulness. Yeah. I mean, willfulness is a tempest in a teapot, Your Honor. Even if we use their stand that it was, what did you know and when did you know it? No, but I'm not talking about the merits of the issue. I'm talking about whether or not we would reach it. You don't reach it. Well, why would we affirm it if it's kind of moot? I mean, wouldn't the issue become moot if we affirm on obviousness? Yes. You don't have to reach whether he was correct on willfulness. That's right. I misunderstood, Your Honor. I apologize. Let me just ... I want to make sure that I've addressed ... Well, the one other point I did want to make really relates both to anticipation and to obviousness and what did Vizzi teach. There was representation by Mr. Keller about what happened at the Vizzi plant that's not consistent with the record. Anticipation is really an independent ground to affirm the invalidity of these patents. The key is did the Vizzi machine work for the intended purpose of the claims, which was to break bundles of uneven height from a log? That's it. The testimony, the uncontested facts, I want to be clear, the uncontested facts established that it did. What I want to emphasize as a point of law to Your Honors is what we're dealing with works for the intended purpose. We're dealing with the concept of utility. That's a low standard. It has to have some usefulness to break bundles. The uncontested facts established that. If you look at Mr. Fankhauser's testimony, who was their only witness who argued against this, at Appendix 7720, he said the machine worked to break smaller bundles of uneven height. The machine worked to break bundles of e-flute product of uneven height. Sometimes manual intervention was required for the e-flute bundles, but not all the time. It worked in manual mode. That's all the claim requires. You're saying there was no contradictory testimony? He's the only witness for them. He's the guy who attacks whether Vizzi worked. Our witnesses all said that it worked. Lynn Versham said that it worked commonly, routinely, saw it working all the time. He explained the problems that they were having with all the machines in the plant, and how there were startup issues and maintenance issues, and how he would help to fix them. Andy Olson, Andy Kaptinas also testified it was common and routine and in many applications that the bundle breakers did work at the plant. I did want to make sure that both helps us understand what does the claim teach for obviousness and whether it anticipates or not. I really urge the court to look at that evidence carefully, especially Mr. Fankhauser, because it concedes utility, which is the point. Thank you, Your Honor. Mr. Vitt, Mr. Keller, you have... Yes, thank you, Your Honor. I've got a couple minutes and I will... More than two? I will be brief. Let me start for a moment with a question raised by the court on secondary considerations, because I think it is an important thing as we look not only to the evidence that we think refutes obviousness, but also as to the inferences that were being drawn by the court. There is extensive evidence in the record about commercial success, about long-felt need, about laudatory praise from the industry, including from Alliance, including the failures of others, including Alliance. But what was curious about what the judge did is he then goes to Takasa to find that contemporaneous invention trumps that evidence. And the only thing that was in the record with respect to Takasa was a stipulation that it was known in the United States in June of 2002. Judge also found, although he has a question about the burden that he raises in his appendix to the court, but he found that there was prior conception in 1999 and prior reduction to practice in 2001 and earlier offers to sell by the George Martin Company in very early 2002. And the record suggests Takasa really isn't prior art. But Mr. Vitt properly focuses us not on that question, but on whether there is a nexus between those secondary considerations and the claimed invention. Can you show us one? Yeah, I think there is. I think if you go back and you look at the original offers for sale that were put into evidence through Bob Morgan of the George Martin Company, it talks about the inventive feature of the patent of the quick break system. It talks about its ability to break multiple logs with this compliance structure. I think that is sufficient. In fact, where you show commercial success, there's a presumption of the nexus. I think we went beyond that and actually proved it through the evidence of the witnesses. But on the inference question, let me go back for one moment to what Judge Alsop does. Was there really commercial success? I mean, you continued to sell about 10 a year. They continued to sell about 10 a year. There wasn't any great leap? Oh, actually, if you look at the evidence, and you have to go then to the damage experts, and you look at how they track the order, and you look at how they track the market shares, and you see the difference in the market share for the George M. Martin Company as it explodes, as it comes to market with the quick break system with this feature of a compliance structure, I think there is direct evidence of the nexus to the commercial success. With respect to Takasa, I don't see how you draw the inference of contemporaneous invention where there is no evidence of when Takasa, quote, invented its machine. There was no testimony from engineers. There were no documents. And that's what's troubling as the inferences are being drawn. Judge Alsop draws an inference of contemporaneous invention to overcome what we think is the significant evidence of secondary consideration. And I think that pervades the entirety of his order. Let me go for one moment, because I think the situation here. We need some final thoughts. Yeah, when Your Honor was asking about what is the motivation to combine, I think if you look at the Henry Cuban case, which it talks about, yes, obvious to try now may be considered under the KSR test, but obvious to try does not equate to obviousness in certain situations. I think that's the one we have here. I think that's why I talked about the myriad of parameters, what Mr. Talken was facing in the industry, what he had to consider, and what he had to come up with, not only in terms of placement, but the other factors. And I think that takes it out of the obvious to try situation. Thank you, Mr. Keller. And I think we're done. Mr. Bitt, I don't think there was anything on the cross-appeal address. That's correct, Your Honor. We are finished. Thank you for hearing us out. Thank you. The next case